## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELIZABETH BLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-1026-R |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT NO. | ) | |
| I-002 OF OKLAHOMA COUNTY, | ) | |
| a/k/a, WESTERN HEIGHTS PUBLIC | ) | |
| SCHOOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment [Doc. No. 63]. The matter is fully briefed and at issue [Doc. Nos. 74, 76]. For the reasons explained below, the motion is granted in part and denied in part.

## INTRODUCTION

In mid-2020, during the height of the Covid-19 pandemic, the Western Heights School District made the decision to have all teachers work virtually from their assigned classrooms with students participating from home. Upon learning of this arrangement, Plaintiff Elizabeth Bley, a career teacher at Western Heights, promptly requested permission to teach virtually from her home (instead of the empty classroom) because she contended her underlying health conditions placed her at high risk of developing severe complications from Covid-19. The parties communicated about Plaintiff's request for several weeks, but no accommodation was reached – the District was unwilling to let

Plaintiff work from home and Plaintiff was unwilling to teach from the school building. After Plaintiff failed to report to the school building on multiple occasions, the District terminated her employment. This lawsuit followed.

In her Amended Complaint [Doc. No. 11], Plaintiff asserts claims against the District for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101, et seq., violations of the Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq., violations of her due process rights under state and federal law, breach of contract, and failure to pay wages.[1] The District moves for summary judgment on all claims.[2]

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and

---

[1] Plaintiff previously dismissed several other claims that were asserted against the District [Doc. No. 58].

[2] Plaintiff did not file a cross-motion for summary judgment but nevertheless contends that the Court should grant summary judgment in her favor on the ADA and FMLA claims pursuant to Rule 56(f). The Court declines to do so. Further, as explained below, there are material factual disputes that preclude summary judgment on some of these claims.

entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)).

Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## FACTUAL BACKGROUND

Plaintiff was employed by the District as a career teacher pursuant to a written employment contract. The employment contract provides that she will perform the duties assigned by the Superintendent and be in her designated building during work hours.

Due to the ongoing Covid-19 pandemic, the District adopted a plan for the 2020-2021 school year where students would attend school virtually from their homes and teachers would instruct virtually from their classrooms. The District's Special Education Director informed teachers of this plan and indicated that alternatives might be available to those with preexisting health conditions. Plaintiff asserts that she asked the Special Education Director for permission to work from home and was told it would not be a

problem. However, in early August, he reversed course and instructed Plaintiff to direct her request to building administrators and the Superintendent. Def. Br. ¶¶ 1-3.

Plaintiff promptly sent her work-from-home request to the District's Human Resources Director, and a volley of email communications between Plaintiff and the District ensued. Both parties rely on these communications in support of their respective arguments. For ease of reference, the Court has summarized these communications in timeline format:

- August 10 – Plaintiff emails the District's Human Resources Director to request that she be allowed to work from home due to medical conditions that put in her the high-risk category for complications from Covid-19. Def. Ex. 6.

- August 11 – Teachers are required to report to the school site for professional/preparation days. Def. Ex. 7.

- August 13 – The Human Resources Director informs Plaintiff that she is not approved to work from home, she is expected to report to school, she will be the only person present in the classroom, and she will need to provide a doctor's statement if she believes she is entitled to an accommodation. Def. Ex. 10. This same day, Plaintiff's nurse practitioner sends the District a letter stating that Plaintiff has an autoimmune disorder and "is at higher risk of contracting Covid-19." Def. Ex. 11.

- August 14 – Plaintiff formally requests permission to work from home as an accommodation under the Americans with Disabilities Act.[3] Def. Ex. 12.

---

[3] From this point forward, all communications between Plaintiff and the District occurred through legal counsel.

4

- August 17 – The District acknowledges Plaintiff's request for accommodation and instructs her to provide a letter from her treating physician identifying her specific disability and supporting medical history. Pl. Ex. 21.

- August 25 – The District indicates that it has not received documentation of Plaintiff's disability and may be forced to take further action if a response is not received. Def. Ex. 13; Pl. Ex. 22

- August 26 – Plaintiff provides the District with a note from her gastroenterologist identifying her diagnosis of ulcerative colitis. Plaintiff also requests that she be given until September 4th to obtain a more detailed letter describing her disability because her primary care provider wants her to attend an appointment first. Pl. Ex. 9 and 23.

- August 30 – Plaintiff begins working with Edmentum, Inc., an online teaching service. The Edmentum pay records reflect that Plaintiff was paid based on a full-time work week, although Plaintiff testified at her deposition that she only worked a few hours each week and it largely occurred outside of regular school hours. Def. Ex. 14; Pl. Ex. 20, 18:3-23:23.

- September 1 – The District advises Plaintiff that it will disable her teaching software (thereby foreclosing her ability to teach virtually from home) and she will be considered absent without leave unless she requests and meets the requirements for paid leave. Def. Ex. 15. Plaintiff responds that she planned to teach from home tomorrow, requests clarification as to why the District is refusing to grant the accommodation, and inquires as to whether the District is formally ending the ADA interactive process. She

further states that adequate medical documentation has been provided to support a request for sick leave and asks whether the District plans to interfere with her right to use sick leave under these circumstances. Pl. Ex. 26.

- September 2 – School instruction begins, and, true to its word, the District disables Plaintiff's teaching software. Def. Br. ¶ 14. Plaintiff provides the District with another note from her nurse practitioner stating that she has autoimmune and respiratory diseases, infection with Covid-19 would lead to significant illness or death, and all accommodations should be made to limit her exposure. Pl. Ex. 12 and 27.

- September 3 – Plaintiff requests that her computer access be restored during the interactive process so that she can complete her school duties and that she not be charged sick leave during the interactive process. Def. Ex. 17.

- September 5 – The District explains why it is requiring teachers to teach virtually from their classrooms, that safety precautions have been put in place at the school, and that it does not agree that Plaintiff's medical conditions place her in a high-risk category or that "the risk of contracting COVID-19 constitutes a disability under the ADA." Def. Ex. 18. Plaintiff responds with an analysis of why her health conditions qualify as a disability under the ADA, again requests that her computer access be restored, requests at least a temporary work-from-home accommodation while the interactive process is ongoing, and states that she believes she is being unlawfully suspended without pay and retaliated against. Pl.'s Ex. 29.

- September 6 – The District asks Plaintiff to execute a release so that it may obtain her medical records, disputes that she has been suspended, and instructs her to

follow District policy if she wishes to request leave. Def. Ex. 19.

- September 8 – Plaintiff indicates that she will execute a medical records release and reiterates that she wants to continue working during the interactive process but cannot because the District disabled her computer access. Pl. Ex. 31.

- September 25 – The District indicates that it has not received any medical records and Plaintiff will be considered absent without leave. Plaintiff responds that she asked her providers about the records, has not been paid even though she requested paid leave and has provided sufficient information to justify sick leave, and again requests temporary accommodation. Def. Ex. 21 and 22. In a subsequent email, Plaintiff explains that there appears to be confusion about her pay and, although she does not believe she should be required to take paid or sick leave during the interactive process, she is seeking to apply accrued leave to the days the District considers her absent. Pl. Ex. 33.

- October 2 – The District suggests that Plaintiff could work from its vacant daycare center where she would be the only person present, although it explicitly states that it does not consider this an accommodation under the ADA. Def. Ex. 23; Pl. Ex. 34. The District also advises Plaintiff that it will pay her for three days of sick leave in September, needs a doctor's note explaining the reasons for the absence for the remaining days, and that a failure to report to her workstation during the interactive process is not sick leave. Def. Ex. 23 and 27.

- October 20 – The District indicates that it has not received Plaintiff's medical records, has not received a response to its suggestion that she work in the vacant daycare center, and has not received a response to its request that she provide a doctor's note for

medical leave lasting more than three days. Def. Ex. 24

- October 20/21 – Plaintiff indicates that she is waiting for the District to resolve her request for an accommodation under the ADA before she responds to its offer to work at the vacant daycare center and that she is waiting for the District to determine whether it will apply her accrued sick leave. Pl. Ex. 35. The District again advises Plaintiff that she is absent without leave. Def. Ex. 25. Plaintiff also informs the District that she has been ill with pneumonia. Pl. Ex. 35.

- October 26 – Plaintiff advises the District that she believes it has obtained her medical records and is awaiting a decision about her request for an accommodation. Pl. Ex. 36.

- October 28 – The District advises Plaintiff that they can avoid cleaning the vacant daycare center if she is concerned about having the night cleaning staff in the building. Def. Ex. 28. Plaintiff provides a doctor's note indicating that she was sick with pneumonia from September 1 through October 22, requests that accrued sick leave be applied, and again indicates that she is awaiting a decision as to her accommodation request. Def. Ex. 29; Pl. Ex. 37.

- November 5 – The District indicates that it has received Plaintiff's medical records and inquires as to whether Plaintiff intends to respond to its offer to work at the vacant daycare center. Def. Ex. 31. The District further states that Plaintiff must report to work, this directive has no relationship to her request for an accommodation, she is absent without leave, and she is subject to immediate termination. Pl. Ex. 38.; Def. Ex. 26.

- November 20 – The District reviews Plaintiff's medical records and agrees

she has conditions that can be considered disabilities under some circumstances, but concludes that "fear of contracting Covid-19" is not a disability under the ADA. The District directs Plaintiff to report to the school building by November 30th or she will be immediately terminated. The District further informs her that the "temporary" option of working from the vacant daycare center is no longer available. Def. Ex. 32; Pl. Ex. 39.

Shortly after receiving the District's denial, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. Def. Ex. 33; Pl. Ex. 40. Plaintiff failed to report to the school building by the November 30th deadline and, as promised, the District notified her that the Superintendent would recommend to the Board of Education that she be terminated for willful failure and/or neglect to perform duties. Def. Ex. 36; Pl's Ex. 40. Following a due process hearing, the Board voted to terminate Plaintiff's employment. Def. Ex. 40. Plaintiff asserts that the hearing was a "sham" because the Board's legal counsel hired, paid, and exchanged ex parte communications with the hearing officer, the hearing officer made improper evidentiary rulings, and the Board's President has a long-standing relationship with the Superintendent. Pl.'s Br. ¶ 29. After her termination, Plaintiff filed a second EEOC charge asserting that her termination was retaliatory and discriminatory.

## DISCUSSION

### A. Disability Discrimination in Violation of the ADA

The heart of Plaintiff's lawsuit is her claim that the District discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. The ADA encompasses "three distinct types of discrimination: (1) disparate treatment; (2)

failure to accommodate; and (3) disparate impact." *Dansie v. Union Pac. R.R. Co*., 42 F.4th 1184, 1193 n.1 (10th Cir. 2022) (internal quotation marks omitted). Although any claim brought under the ADA requires proof that the employer discriminated "against a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), the analytical framework used to evaluate the claim varies depending on the type of discrimination alleged. *Punt v. Kelly Servs*., 862 F.3d 1040, 1047-48 (10th Cir. 2017); *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1189 (10th Cir. 2003).

For a claim premised on disparate treatment or disparate impact, the plaintiff establishes the required nexus between the adverse employment action and the disability by showing that the employer acted with discriminatory intent. *Punt*, 862 F.3d at 1048. "Such discriminatory intent can be shown either through direct evidence…or through circumstantial evidence, which is evaluated under the *McDonnell Douglas* burden-shifting framework." *Id.*; *see also Davidson,* 337 F.3d at 1189.

In contrast, an ADA discrimination claim premised on a failure to accommodate "does not require any evidence of discriminatory intent, whether direct or circumstantial[,]" and the *McDonnell Douglas* framework is therefore inapplicable. *Punt*, 862 F.3d at 1048-1051; *see also* 42 U.S.C. § 12112(b)(5)(A). Instead, failure to accommodate claims are assessed using "a modified burden-shifting framework" that requires the plaintiff to make an initial showing that (1) she is disabled; (2) she is otherwise qualified; (3) she requested a plausibly reasonable accommodation; (4) and the employer refused to provide accommodations. *Punt*, 862 F.3d at 1050; *see also Aubrey v. Koppes,* 975 F.3d 995, 1005 (10th Cir. 2020). If this showing is made, "the burden of production shifts to the employer

to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship." *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1179 (10th Cir. 1999). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of his or her prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.*

Although failure to accommodate and disparate treatment claims utilize different analytical frameworks, neither party clearly applies these distinct frameworks nor separately analyzes the various ADA claims asserted in this case. It is, however, apparent from the District's briefing that it is moving for summary judgment on all of Plaintiff's ADA claims, which include claims for failure to accommodate, discrimination/disparate treatment, and retaliation. Plaintiff's brief is even less helpful. Putting aside her extensive discussion of why her medical conditions qualify as a disability – an element that was not disputed by the District for purposes of its summary judgment motion – Plaintiff does not cite to a single authority in support of her ADA claims, let alone provide any detailed analysis of the governing law. Despite these briefing deficiencies, the Court has an independent duty to determine whether there are material factual disputes that preclude summary judgment on the ADA claims. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Each claim is addressed separately below.[4]

---

[4] Plaintiff makes no argument concerning her claims under the OADA. However, because the OADA's protections are co-extensive with the protections provided by the ADA, the

### 1. Failure to Accommodate Claim

The ADA defines unlawful discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Put more succinctly, the ADA imposes an "unvarnished obligation" on employers to reasonably accommodate qualified individuals. *Smith* 180 F.3d at 1169 .

As previously noted, to maintain a claim based on an employer's failure to offer reasonable accommodations, the plaintiff bears the initial burden of showing that "1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) the [District] refused to accommodate her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). Establishing these prima facie elements "is not onerous." *Id.*

For purposes of its summary judgment motion, the District assumes that Plaintiff is disabled within the meaning of the ADA, and the first element is therefore not in dispute. *See* Def. Br. 13. The second element requires Plaintiff to show that she is a qualified individual. A qualified individual is a person who possesses "the requisite skill, experience, education and other job-related requirements of the employment position," *Tate v.*

---

Court would reach the same conclusions regarding the OADA claims. *McCully v. Am. Airlines, Inc*., 695 F. Supp. 2d 1225, 1246 (N.D. Okla.), aff'd, 406 F. App'x 260 (10th Cir. 2010).

*Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001) (quoting 29 C.F.R. § 1630.2(m)), and who "with or without reasonable accommodation, can perform the essential functions of the employment position." *Aubrey,* 975 F.3d at 1006 (quoting 42 U.S.C. § 12111(8)). The District does not contend that Plaintiff lacked the skill or experience to perform her job and, as explained further below, Plaintiff has carried her initial burden of showing that she could have performed the essential functions of her job if she was provided with a reasonable accommodation. *See id.*

The third element requires Plaintiff to show that she requested a plausibly reasonable accommodation. Reasonable accommodations are "those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Id.* at 1007. Essential functions are those that are "fundamental job duties" and not those that are "marginal" to the position. *Davidson.*, 337 F.3d at 1191. "[W]hether a particular function is essential is a factual inquiry." *Id.* During this inquiry, considerable deference is given "to the employer's judgment as to what functions of a job are essential." *Id.* However, "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Id.* (internal quotation marks and citation omitted)

Here, the District contends that physical attendance at the school site was an essential function of Plaintiff's job and it need not excuse her from this requirement regardless of any alleged disability. "[P]hysical attendance in the workplace is itself an essential function of most jobs," *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004), and, under normal circumstances, the Court would have little trouble

concluding that physical attendance in the classroom was an essential function of Plaintiff's teaching position. But these were not normal circumstances. The District elected to have all teachers provide virtual instruction from empty classrooms due to Covid-19 and, in this context, whether physical attendance is an "essential function" as opposed to a marginal function is not so easily settled.

In arguing that physical attendance was essential, the District relies on the fact that Plaintiff's employment contract required attendance at the job site. Although the employer's judgment as to what is essential is significant, it is not conclusive. *Davidson*, 337 F.3d at 11914; *see also* 29 C.F.R. § 1630.2(n)(2). Given that there were no students in the classroom, Plaintiff successfully conducted virtual instruction from her home on previous occasions, and the District initially expressed a willingness to implement work-at-home accommodations, a reasonable juror viewing the facts in the light most favorable to Plaintiff could conclude that physical attendance was not an essential function of Plaintiff's job for the 2020-2021 school year. *See* Pl. Ex. 1 at p. 2, ¶ 5; Ex. 3, Ex. 5, Ex. 10. Accordingly, Plaintiff has met her initial burden of showing that her request to work from home is plausibly reasonable on its face. *Mason*, 357 F.3d at 1114 (holding that "a request to work at home is unreasonable if it eliminates an essential function of the job; however, summary adjudication may be improper when the employee has presented evidence she could perform the essential functions of her position at home thereby making the at-home accommodation request at least facially reasonable").

The final element requires Plaintiff to show that the District failed to reasonably accommodate her disability. *Aubrey*, 975 F.3d at 1013. The District contends that it offered

Plaintiff a reasonable accommodation by suggesting she teach virtually from the vacant daycare center. The problem with this argument is that the District did not describe this offer as an accommodation during the interactive process and, contrary to the District's characterization in its briefing, it did more than simply use the wrong nomenclature. Instead, it explicitly told Plaintiff the vacant daycare center was not offered as an ADA accommodation. These facts, viewed in the light most favorable to Plaintiff, are sufficient to show that the District failed to reasonably accommodate her disability.

Because there is sufficient evidence to establish each element of a prima facie failure to accommodate claim, the burden shifts to the District to conclusively rebut one or more elements or establish an affirmative defense, such as undue hardship. *Id*. at 1014. The District does not contend that allowing Plaintiff to work from home would cause any undue hardship and, as discussed above, there are genuine factual disputes as to the prima facie elements that preclude summary judgment on this claim. *See Smith*, 180 F.3d at 1179 ("After considering the submissions by both sides on summary judgment, if there remains genuine evidence supporting each element of the employee's prima facie case and, if need be, disputing the employer's affirmative defenses, summary judgment for the employer should be denied and the matter must proceed to trial.").

Plaintiff additionally contends that the District failed to engage in a "compliant and effective accommodation process" by refusing to provide her with temporary accommodations during the interactive process and by denying her request to use leave. A "failure to engage in the interactive process is not a standalone claim" under the ADA and Plaintiff cites no authority suggesting that the District was required to provide temporary

accommodations or permit the use of leave. *Dansie*, 42 F.4th at 1194 n.2. Nevertheless, an employer's failure to proceed in good faith during the interactive process will often make it difficult for the employer to show an absence of a disputed fact as to the existence of a reasonable accommodation. *Id*. Here, there is evidence from which a reasonable juror, drawing inferences in Plaintiff's favor, could conclude that the District did not proceed in good faith during the interactive process by not considering whether the use of leave or a short-term work-from-home status would be an appropriate temporary accommodation. *Id.* at 1195 (denying summary judgment because a reasonable jury could conclude that employee's leave request was at least a plausibly reasonable accommodation). Accordingly, there is a genuine issue of material as to whether the District fulfilled its responsibilities during the interactive process which further indicates that summary judgment on Plaintiff's failure to accommodate claim is not warranted.

### 2. Discrimination/Disparate Treatment Claim

In addition to her failure to accommodate claim, Plaintiff asserts that the District intentionally discriminated against her on the basis of her disability. To succeed on this claim, Plaintiff must present direct evidence of discriminatory intent or proceed through the *McDonnell Douglas* burden shifting framework. *Aubrey*, 975 F.3d at 1014; *Davidson*, 337 F.3d at 1189. The first step of this framework requires the plaintiff to establish a prima facie case of discrimination by showing (1) that she is disabled within the meaning of the ADA; (2) she is qualified for the job held or desired; and (3) she was discriminated against because of her disability. *Lincoln v. BNSF Railway Co.,* 900 F.3d 1166, 1192 (10th Cir. 2018). "If the plaintiff advances a prima facie case of discrimination, the burden shifts to

the employer to articulate a legitimate, nondiscriminatory reason" for the employment action. *Id.* at 1193 (quotation omitted). "If the employer articulates a satisfactory reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination." *Id.* Pretext is typically shown "by revealing weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id.* (quotation omitted). Importantly, in assessing pretext, courts must "examine[] the facts as they appeared to the decisionmakers" and should not "second-guess [the employer's] business judgment—it matters not if [the employer's] reasoning was correct, just whether it honestly believed in the reason for the termination." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 991 (10th Cir. 2021)

Assuming Plaintiff can establish a prima facie case of discrimination, the District has proffered a legitimate, non-discriminatory reason for the termination – her failure to report to work after repeatedly being instructed to do so. This shifts the burden to Plaintiff to show pretext, but she does not offer any argument on this point and therefore cannot survive summary judgment. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) ("Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment."); *Robey-Harcourt v. BenCorp Fin. Co.*, 326 F.3d 1140, 1143 (10th Cir. 2003) ("Parties must support their arguments with legal authority."). Moreover, the undisputed facts show that the District consistently maintained the position that Plaintiff did not have a disability, was not entitled to work from home, and was absent from her position without leave for an extended period

of time. The District's reasoning on these issues may have been incorrect, but Plaintiff has pointed to no evidence showing that the District did not honestly believe in the reason for the termination or that it was actually a pretext to cover up a discriminatory motive. The Court therefore concludes that the District is entitled to summary judgment on the discrimination/disparate treatment claim.

## B. Retaliation in Violation of the ADA

Plaintiff's final ADA claim alleges that the District unlawfully retaliated against her by terminating her employment and denying her use of leave after she requested accommodations and filed her first EEOC charge. As with disparate treatment claims, ADA retaliation claims require evidence of discriminatory intent and the *McDonnell-Douglas* framework is therefore applicable. *Edmonds-Radford*, 17 F.4th at 994. Thus, it is initially Plaintiff's burden to show "(1) she was engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." *Id.* If the plaintiff can establish these prima facie elements, "the burden shifts to [the defendant] to establish a legitimate, nondiscriminatory reason for the adverse action" and then back to the plaintiff to show that the defendant's "purported reason was pretextual." *Id.*

Here, the District (rightfully) concedes that a request for accommodation and the filing of an EEOC charge are protected activities and that termination is an adverse employment action, but argues that Plaintiff cannot establish the third element of her prima facie case – causation. At least with respect to the EEOC charge, the Court agrees that Plaintiff has not met her burden on this element. "To establish that a causal connection

exists between the filing of administrative charges and [a] discharge, [a plaintiff] may proffer evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (quotation omitted). Although the District formally terminated Plaintiff subsequent to the filing of her first EEOC charge, the undisputed evidence shows that they intended to proceed with her termination prior to the filing of the charge. *See* Def. Ex. 32. Given this order of events, Plaintiff has not raised an inference that her termination was retaliation for the filing of her EEOC charge.

In any event, assuming she can establish a causal connection between her protected activities and any adverse employment action, she has failed to rebut the District's assertion that there is no evidence of pretext.[5] The "crucial question" in the context of a retaliation claim "is whether [the employee] can show that [the defendant's] motive for taking adverse action was its desire to retaliate for the protected activity." *Id.* at 1210-11 (quotation omitted). The relevant inquiry is therefore "not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (quotation omitted) (alteration in original).

The District contends that it terminated Plaintiff because she failed to report to work as directed and there is no evidence indicating that the District did not act in good faith on

---

[5] As evidence of discrimination, Plaintiff points to the District's action in terminating her computer access, failing to pay her, and failing to permit her to use leave. Plaintiff does not explain how these actions show pretext for retaliation or discrimination, as opposed to showing that the District honestly (but perhaps incorrectly) considered her absent without leave.

its belief that Plaintiff was not entitled to work from home. Plaintiff (once again) does not offer any argument in response. Although the District's determination that Plaintiff did not have a disability and its decision to require her to work from the school site may have been unwise, unfair, and even incorrect, Plaintiff has not satisfied her burden to show that the proffered reason for failing to accommodate her, terminating her employment, or denying her leave was merely a pretext for retaliation. Accordingly, the Court concludes that the District is entitled to summary judgment on Plaintiff's ADA retaliation claim.

## C. Violation of the FMLA

Plaintiff next alleges two claims under the FMLA: interference with the exercise or attempt to exercise FMLA rights under 29 U.S.C. § 2615(a)(1) and retaliation under 29 U.S.C. § 2615(a)(2). These "two theories require different showings and differ with respect to the burden of proof." *Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1287 (10th Cir. 2007). Accordingly, each claim is addressed separately below.

### 1. Interference with FMLA

"The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012). To establish an interference claim, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *Id.* "A deprivation of these rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden shifting analysis does not apply." *Id.* at 1226-27.

Plaintiff does not dispute that she never formally requested FMLA leave. Rather, her interference claim is premised on the District's failure to provide her with notice that she may be eligible for FMLA leave based on her medical conditions. The District contends summary judgment is warranted because Plaintiff has not shown that she was entitled to FMLA leave or that she put the District on notice that she could not perform the functions of her job.

Although the question is close, the Court concludes that Plaintiff has presented sufficient evidence to create a material factual dispute as to each element of her interference claim. With respect to the first element, an employee is entitled to FMLA leave when they have "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" includes an illness or physical condition that involves "continuing treatment by a health care provider." *Id.* at § 2611(11)(B). There is evidence in the record indicating that Plaintiff informed the District that she suffered from an exacerbation of asthma and then pneumonia for several weeks, which required her to be closely monitored and treated with I.V. therapy, steroids, and antibiotics.[6] The timing of this illness raises some credibility issues as Plaintiff did not immediately inform the District of her illness and was apparently able to continue

---

[6] To the extent Plaintiff argues that she could not work at the school site because her ulcerative colitis and asthma put her at heightened risk for serious complications from Covid-19, the Court observes that the Department of Labor's guidance indicates that "[l]eave taken by an employee solely for the purpose of avoiding exposure to COVID-19 is not protected under the FMLA." *Covid-19 and the Family and Medical Leave Act Questions and Answers*, Dep't of Labor, https://www.dol.gov/agencies/whd/fmla/pandemic#4 (last visited May 1, 2023); *see also Romans v. Wayne Cnty. Comm'n*, No. CV 3:20-0797, 2021 WL 4005614, at *4 (S.D.W. Va. Sept. 2, 2021)

working for her other employer. Nevertheless, viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that her pneumonia was a serious health condition that made her unable to work from the school site as required by the District.

The second element of an FMLA interference claim requires proof that an adverse action by the employer interfered with the right to take FMLA leave. Although an employee must invoke her FMLA benefits in some way, she is not required to "specifically ask for FMLA benefits" or "even mention the FMLA." *Tate v. Farmland Indus., Inc*., 268 F.3d 989, 997 (10th Cir. 2001). Rather, "[i]f the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply." *Id.* An employer's failure to follow this notice requirement "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). Although Plaintiff did not specifically request FMLA benefits in connection with any of her medical conditions, the District knew she suffered from a bout of pneumonia that required treatment and that she wanted to use accrued sick leave for this illness. This is sufficient to raise a fact question as to whether the District was on notice that Plaintiff suffered from a serious health condition such that she may have been eligible for FMLA leave. *See Greenwell v. Charles Mach. Works Inc*, No. CIV-10-0313-HE, 2011 WL 1458565, at *5 (W.D. Okla. Apr. 15, 2011) (finding that defendant's failure to notify plaintiff of his eligibility for FMLA leave was sufficient to satisfy the second element of a FMLA interference claim).

Last, Plaintiff must show that the adverse employment action was related to the exercise or attempted exercise of the employee's FMLA rights. Plaintiff was terminated

because she was repeatedly absent without leave, but that reason would not exist (or would at least be seriously undermined) had Plaintiff been notified and allowed to take FMLA leave. Thus, material factual disputes preclude summary judgment on the FMLA interference claim.

### 2. Retaliation

"Unlike claims under an interference theory, FMLA claims under a theory of retaliation are subject to the burden-shifting analysis of *McDonnell Douglas*." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1229 (10th Cir. 2012). But an FMLA retaliation claim also differs from an interference claim in another important respect: "the timing of the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). While an interference claim is premised on an employee being denied leave or prevented from taking the full amount of leave, "a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Id.* at 1287-88; *see also Skerce v. Torgeson Elec. Co.,* 852 F. App'x 357, 364-65 (10th Cir. 2021) (unpublished); *Valdez v. McGill*, 462 F. App'x 814, 822 (10th Cir. 2012) (unpublished).

Here, Plaintiff cannot succeed on her FMLA retaliation claim because she did not successfully avail herself of her FMLA rights and then suffer an adverse action upon returning to work. Moreover, even if Plaintiff could make out a prima facie case of FMLA retaliation, the District has proffered a legitimate nondiscriminatory reason for her termination and Plaintiff has failed to show that this reason was a pretext for retaliation.

Accordingly, the District is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

### D. Violation of Due Process Rights

Plaintiff's next set of claims concerns alleged due process violations arising from her pretermination hearing. She brings claims pursuant to 42 U.S.C. § 1983 for violations of her procedural and substantive due process rights as well as claims based on violations of state law.

#### 1. Procedural Due Process

A procedural due process claim requires a plaintiff to "prove two elements: that he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and that he was not 'afforded an appropriate level of process.'" *Couture v. Bd. of Educ. of Albuquerque Pub. Sch*., 535 F.3d 1243, 1256 (10th Cir. 2008) (citations omitted). The "root requirement" of the due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted).

The District does not dispute that Plaintiff had a constitutionally protected property interest in her career teaching position but contends that she received all the process she was due prior to her termination. "A full evidentiary hearing is not required prior to an adverse employment action." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quotation omitted). Instead, "the individual entitled to due process protection needs only to be given notice and an opportunity to respond." *Id.* (quotation omitted). Plaintiff was

provided written notice of the charges against her and an opportunity to respond prior to her termination. This process is constitutionally sufficient.

To avoid summary judgment on this claim, Plaintiff contends that the tribunal at her hearing was biased because the Board President and Superintendent have a long-standing relationship. Impartiality of the tribunal is, of course, "an essential element of due process." *Riggins*, 572 F.3d at 1112 (10th Cir. 2009). However, "because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986) (internal citation omitted). "Due process is violated only when 'the risk of unfairness is intolerably high' under the circumstances of a particular case." *Id.*; *see also* Riggins*, 572 F.3d at 1112. Although Plaintiff has presented evidence showing that the Superintendent and Board President had a long-standing relationship, there is no evidence indicating that any members of the tribunal were actually biased with respect to the factual matters at issue.

Plaintiff also argues that the hearing was unfair because the hearing officer made incorrect evidentiary rulings and the Board's attorney served as the attorney for the school administration, hired the hearing officer, and prepared findings of fact. However, none of these issues sufficiently compromises the fairness of the hearing such that Plaintiff has suffered a constitutional deprivation. *See Riggins,* 572 F.3d at 1112 (holding that combining adjudicatory and investigative functions is not a denial of due process); *James v. Indep. Sch. Dist. No. I-050 of Osage Cnty.*, 448 F. App'x 792, 797 (10th Cir. 2011) (unpublished) (holding that there is no due process violation where a hearing officer was

paid by a school board's law firm); *Seabourn v. Indep. Sch. Dist. No. I-300 of Woodward Cnty.*, 775 F. Supp. 2d 1306, 1313 (W.D. Okla. 2010) (finding that plaintiff received sufficient process even though she complained that the tribunal had already made a decision prior to her hearing because she was not deprived of any property until after the hearing). Plaintiff has not come forward with any evidence showing that the board members felt coerced or pressured to reach a result with which they did not agree. Accordingly, the District is entitled to summary judgment on Plaintiff's procedural due process claim.

### 2. Substantive Due Process

Plaintiff additionally argues that her substantive due process rights were violated because the hearing was a sham and her termination was unlawful. This claim is meritless. To prevail on a substantive due process claim, a plaintiff "must demonstrate that the state acted in a manner that 'shock[s] the conscience.'" *Uhlrig v. Harder*, 64 F.3d 567, 571 (10th Cir. 1995) (internal citation omitted). This standard is exceedingly difficult to meet. A "plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* at 574. Instead, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574. Here, even assuming Plaintiff's allegations are true, there is nothing that "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins, v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992). Accordingly, the District is also entitled to summary judgment on Plaintiff's substantive due process claim.

### 3.  State Law Due Process Claim

Plaintiff asserts that the District violated the Teacher Due Process Act of 1990, Okla. Stat. tit. 70, § 6-101.20, et. seq. by failing to admonish her and give her time for improvement prior to recommending her dismissal. The Teacher Due Process Act provides "that school administrators who identify the sort of poor performance on the part of a teacher that could lead to a termination recommendation for willful neglect of duty shall '[a]dmonish the teacher, in writing, and make a reasonable effort to assist the teacher in correcting the poor performance or conduct' and '[e]stablish a reasonable time for improvement, not to exceed two (2) months, taking into consideration the nature and gravity of the teacher's performance or conduct.'" *Hill v. Indep. Sch. Dist. No. 25 of Adair Cnty.*, 57 P.3d 882, 886 (Okla. Civ. App. 2002) (quoting Okla. Stat. tit. 40 § 6–101.24(A)) (alterations in *Hill*). Importantly, the admonishment requirement applies to "teachers who have remediable teaching performance problems that could result in dismissal for willful neglect of duty" and not teachers "whose dismissals are based on specific, irremediable instances of misconduct." *Id.* at 887.

Here, Plaintiff's termination was not based on teaching deficiencies but on her repeated refusal to report to the school site because she believed she was entitled to an accommodation. This is not a teaching performance problem subject to remediation and the admonishment provisions of the Teacher Due Process Act therefore do not apply. Even if the admonishment requirements do apply, the District complied by identifying the problem in writing, directing Plaintiff to remedy the problem by reporting to work, and giving her an adequate amount of time in which to do so.

Accordingly, the District is entitled to summary judgment on Plaintiff's due process and breach of contract claims to the extent they are premised on a violation of the procedural requirements contained in the Teacher Due Process Act.

### E.  Breach of Contract/Failure to Pay Wages

Last, Plaintiff claims that the District breached the employment contract and violated state law by terminating her without just cause and failing to pay her sick leave to which she was entitled.[7] The teacher tenure law, which governs career teachers like Plaintiff, "was intended to give job security to competent and qualified teachers and to protect them from dismissal or non-renewal for political, personal, arbitrary or discriminatory reasons." *Weston v. Indep. Sch. Dist. No. 35 of Cherokee Cnty*., 170 P.3d 539, 543 (Okla. 2007). Oklahoma courts have recognized that a discharged teacher may bring a breach of contract claim if the termination lacked cause and that summary adjudication of such a claim is inappropriate where there are factual disputes concerning the teacher's alleged violations. *Hoerman v. W. Heights Bd. of Educ*., 913 P.2d 684, 690 (Okla. Civ. App. 1995) ("Without established cause, or previous breach by Hoerman, dismissal would constitute breach of the employment contract."); *see also Scherich v. Indep. Sch. Dist. No. 42 of Garfield Cnty.,* 591 P.2d 1270, 1273 (Okla. Civ. App. 1979) (explaining that "while there shall be no right of appeal from a board's finding of cause, yet, if in fact there existed no evidence upon which to base a finding of a dismissable cause,

---

[7] Contrary to Plaintiff's description, Plaintiff was not suspended by the District because the District continued to request her teaching services at the school building. *See* Okla. Stat. tit. 70, § 6-101.3 (defining suspension as a "temporary discontinuance of the services of an administrator or teacher").

the board has breached the contract").

As in *Hoerman*, the Court concludes that material factual disputes preclude summary adjudication of Plaintiff's breach of contract claim. As previously noted, Plaintiff has viable claims for discrimination under the ADA and unlawful interference with her FMLA rights. If a jury finds for Plaintiff on these claims, it could also conclude that the District acted arbitrarily and lacked cause to terminate her for failure to report to the school site. A reasonable juror could also reject the District's claim that Plaintiff breached her contract by working for another online teaching service given that Plaintiff was not terminated for abandonment of contract and there is conflicting evidence concerning how much time she was required to devote to this additional job.

Finally, the Teacher Due Process Act provides that a career teacher who has been recommended for termination "shall receive any compensation or benefits to which the teacher is otherwise entitled until the decision of the board becomes final." Okla. Stat. tit. 70, § 6-101.26(C). There are factual disputes as to whether Plaintiff properly requested sick leave or was entitled to sick leave based on her medical conditions. Accordingly, the Court declines to rule as a matter of law that Plaintiff is not entitled to any sick leave benefits.[8]

### F. Plaintiff's Motion to Strike

Plaintiff separately moves to exclude the EEOC's determination letter from the

---

[8] Although Plaintiff cites to the Families First Coronavirus Response Act in her response brief, she made only one passing reference to this statute in her Amended Complaint and has not alleged a freestanding claim under this Act.

District's summary judgment motion [Doc. No. 73]. The EEOC's letter states that "[b]ased on our review of the available evidence, we do not believe it can be established that the employer discriminated against you based on a disability[.]" Def. Ex. 42. Plaintiff moves to exclude this letter on two grounds.

First, she argues that the letter is inadmissible hearsay that fails to meet the public records exception outlined in Federal Rule of Evidence 803(8) because it lacks trustworthiness. Rule 803(8) provides that a public record is not excluded by the hearsay rule if "(A) it sets out...(iii) in a civil case...factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Plaintiff challenges the trustworthiness of the letter because the EEOC did not interview Plaintiff or conduct a thorough investigation. It appears, however, that the EEOC received much of the same email correspondence that is cited in the summary judgment briefs. Accordingly, at this stage, the Court is not persuaded that Plaintiff has shown a lack of trustworthiness such that the EEOC's determination letter should be excluded under Rule 803(8).

Second, Plaintiff argues that the letter should be stricken from the District's summary judgment brief as unduly prejudicial pursuant to Rule 403. The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010). This is particularly true at the summary judgment stage because the balancing process contemplated by Rule 403 "is best undertaken at the trial itself." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (internal citation

omitted). Accordingly, the Court declines to strike the EEOC letter from the summary judgment record pursuant to Rule 403 but may revisit this issue if the case proceeds to trial.

## CONCLUSION

As outlined above, Plaintiff's Motion to Strike the EEOC's Determination Letter from Defendant's Motion for Summary Judgment [Doc. No. 73] is DENIED. Defendant's Motion for Summary Judgment [Doc. No. 63] is GRANTED in part and DENIED in part. Summary judgment is granted in the District's favor as to Plaintiff's claims for retaliation in violation of the ADA, discriminatory discharge/disparate impact in violation of the ADA, retaliation in violation of the FMLA, and violation of state and federal due process protections. Summary judgment is denied as to Plaintiff's claims for failure to accommodate under the ADA, unlawful interference in violation of the FMLA, and breach of contract/failure to pay wages.

IT IS SO ORDERED this 9th day of May, 2023.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**